IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ERICK POSNER | : |
| | : |
| v. | : Civil No. JKS 08-3306 |
| | : |
| ADVENTIST HEALTHCARE, INC. | : |
| d/b/a SHADY GROVE ADVENTIST | : |
| HOSPITAL | : |

## MEMORANDUM OPINION

Plaintiff Erick Posner (Posner) filed this action alleging that Defendant Adventist Healthcare, Inc. d/b/a Shady Grove Adventist Hospital (Shady Grove) violated Title III of the Americans with Disabilities Act of 1990 (ADA) and Section 504 of the Rehabilitation Act of 1973. Dkt. No. 1. Pursuant to consent of the parties, the case was referred to me for all further proceedings. Dkt. No. 13. Presently pending and ready for resolution is Shady Grove's motion to dismiss or for summary judgment. Dkt. No. 25. The motion is fully briefed, and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, Shady Grove's motion will be denied.

### I. Background.

The following facts are either undisputed or are construed in the light most favorable to Posner. Erick Posner is an individual who is deaf. Dkt. No. 28, Ex. 2 at 10. Although he can vocalize one or two syllable words, his vocalizations generally are not understandable to listeners. *Id.* at 11. Posner can read and write, but he cannot read lips. *Id.* at 12. During the evening of July 18, 2008, Posner experienced heart palpitations, light-headedness, and throat discomfort. *Id.* at 51-52. Posner called 911 through a video relay service and was transported by ambulance to Shady Grove. *Id.* at 53, 57-59. Sara Collins (Collins), who is also deaf,

accompanied Posner to the hospital.  Dkt. No. 28, Ex. 4 at 10, 33.  Posner and Collins arrived at Shady Grove shortly before 9:00 p.m.  Dkt. No. 25, Ex. C.

Upon their arrival at Shady Grove, Collins requested an interpreter for Posner via a written note.  Dkt. No. 28, Ex. 4 at 39-40.  At approximately 9:00 p.m., Posner himself requested a sign language interpreter by writing a note that Collins delivered to a nurse.  Dkt. No. 28, Ex. 4 at 38, Ex. 5 at 31-32.  After the nurse read the note, Collins returned to Posner with the note still in her possession.  Dkt. No. 28, Ex. 2 at 74.  About 10 minutes later, Nurse Diana Lynn Crummitt asked Posner in writing if he would prefer a live interpreter or Deaf Talk, a remote sign language interpreter service provided through video-conferencing equipment.  Dkt. No. 28, Ex. 8 at 29.  Posner testified that he chose Deaf Talk by circling it on Nurse Crummitt's note.  Dkt. No. 28, Ex. 2 at 76-77.  In contrast, Crummitt testified that Posner did not write anything on her note but rather communicated his wishes by speaking to her.  Dkt. No. 28, Ex. 8 at 31, 61.[1] Crummitt testified that she did not keep her written note to Posner because he did not write on it.  Dkt. No. 28, Ex. 8 at 30.  Crummitt's note in Posner's medical record at 9:25 p.m. states: "Pt offered a live sign interpreter, pt refused.  Pt speaks well and states he prefers to speak or write and will use deaf talk if needed."  Dkt. No. 25, Ex. C at 2.[2]

During his treatment at Shady Grove, Deaf Talk was never provided, and hospital staff communicated with Posner with speech and by writing.  Dkt. No. 25, Ex. B at 68-70.  Posner felt that staff were reluctant to use writing, and says that he could not read the doctor's handwriting.  Dkt. No. 28, Ex. 2 at 68-69.  Throughout his treatment, Posner continued to expect to use Deaf

---

[1] Crummitt also claims that no one else was present during her exchange with Posner.  *Id.* at 33.  Collins, however, testified that she was present and provides a third version of the exchange, stating that Posner wrote out "Deaf Talk" on Crummitt's note.  Dkt. No. 28, Ex. 4 at 48.

[2] In contrast, ambulance notes indicate that Posner is "unable to communicate verbally" and that all communications were in writing.  Dkt. No. 28, Ex. 10.

2

Talk. *Id.* at 82. He claims that his written communications with staff were not effective, that he did not understand his condition upon discharge and that he could not ask questions or otherwise participate in his care. *Id.* at 95, 100-04, 106-07. However, he never renewed his request for a live interpreter or Deaf Talk. *Id.* at 84-85. The discharge records note: "Written discharge instructions given to pt with stated understanding, ambulated out with friend," and "Pt voiced understanding of plan of care." Dkt. No. 25, Ex. C at 3. Posner read and signed the written discharge instructions, and understood that he should arrange for follow-up care. Dkt. No. 28, Ex. 2 at 103-04.

At the time of Posner's emergency room visit, Shady Grove had a written policy for "Interpreter Services for Hearing-Impaired & Non-English Speaking Patients," effective and revised as of April 2008. Dkt. No. 25, Ex. E. The purpose of the policy was "[t]o provide an effective mechanism of communication with patients who are hearing-impaired or unable to speak English, sufficiently to facilitate their understanding of information related to their medical condition or hospital visit." *Id.* at 1. The policy places responsibility for determining the patient's preference for interpreter services on the nursing staff, and states that "[i]f the patient declines interpreter services and prefers to use an adult family member/other there must be documentation in the nursing notes to that effect." *Id.* at 1, 5.

## II. <u>Standard of Review.</u>

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See*

*United States v. Diebold*, *Inc.,* 369 U.S. 654, 655 (1962). The burden is on the moving party to demonstrate the absence of any genuine issue of material fact. *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). A moving party who will not have the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting the burden of raising a genuine issue of fact by substantial evidence to the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

A party who will have the burden of proof at trial, on the other hand, must make a showing sufficient to establish the existence of the essential elements of its claim or defense. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). To defeat the motion, the party opposing summary judgment must submit evidentiary materials showing facts on the basis of which the finder of fact could reasonably decide the case in its favor. *Anderson*, 477 U.S. at 252. If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. *Celotex,* 477 U.S. at 323.

**III. Discussion.**

Posner has withdrawn his claim under the Americans with Disabilities Act and his request for injunctive relief. Dkt. No. 28 at 1 n.1. Accordingly, Defendants' motion to dismiss that claim will be granted and this opinion will consider only the claim for damages under the Rehabilitation Act.

Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be

4

> subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794. To establish a *prima facie* violation of Section 504, Posner must prove that: (1) he has a disability; (2) he is otherwise qualified; (3) he was excluded from participation in, was denied the benefits of, or was subjected to discrimination solely by reason of his disability; and (4) Shady Grove receives federal financial assistance. *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 826 (D. Md. 1998) (citing *Doe v. Univ. of Maryland*, 50 F.3d 1261, 1265 (4th Cir. 1995)). Only the third element is in dispute here.

Courts look to the regulations promulgated under the Rehabilitation Act in determining the adequacy of medical care providers' accommodation of hearing impaired patients. *Alexander v. Choate*, 469 U.S. 287, 304 n.24 (1985));[3] *Proctor*, 32 F. Supp. 2d at 826 (citing *Rothschild v. Grottenthaler*, 907 F.2d 286, 291 (2d Cir. 1990)). Shady Grove must "provide appropriate auxiliary aids" to persons with impaired hearing "where necessary to afford such persons an equal opportunity to benefit from the service in question." 45 C.F.R. § 84.52(d)(1). The regulations do not, however, require services which "produce the identical result or level of achievement for handicapped and nonhandicapped persons" so long as they "afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit . . . in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2).

There is no *per se* rule that sign language interpreters are necessary in hospital settings. *Proctor*, 32 F. Supp. 2d at 827; *see also Board of Education v. Rowley*, 458 U.S. 176 (1982) (holding that sign language interpreters are not required when lip reading or other accommodations are sufficient). Rather, the test is case-specific, asking "whether an interpreter was necessary to provide the hearing-impaired individual with an equal opportunity to benefit

---

[3] These regulations are "an important source of guidance on the meaning of § 504." *Choate*, 469 U.S. at 304 n. 24.

from the services provided by defendants to patients who do not suffer from a hearing impairment." *Estate of Alcalde v. Deaton Specialty Hosp. Home, Inc.*, 133 F. Supp. 2d 702, 707 (D. Md. 2001). Whether the provided auxiliary aids were adequate generally presents a question of fact. *Id.* In *Proctor*, a deaf patient and his family requested a sign language interpreter several times during his hospital stay. Although a medical technician from another department in the hospital assisted with interpreting on one occasion, it was not until his third day in the hospital that Proctor had an interpreter; he otherwise communicated with medical staff through lip reading and writing notes. 32 F. Supp. 2d at 822-24. The district court found that there was a genuine issue of material fact as to whether the hospital provided adequate auxiliary aids. *Id.* at 827-28.

Here, as in Proctor, there are genuine disputes of material fact as to whether Shady Grove provided adequate auxiliary aids to Posner. It is undisputed that Posner requested an interpreter, ultimately Deaf Talk, to assist him in participating in his treatment. It is similarly undisputed that neither a live interpreter nor Deaf Talk was provided. The reason for this failure, however, is starkly disputed. Shady Grove claims that Posner refused a live interpreter, stated that he preferred to speak or write and would use Deaf Talk if needed, and then communicated effectively through speech and writing without ever indicating a need for Deaf Talk. Posner, however, claims that he never declined a live interpreter or Deaf Talk, denies saying that he would use Deaf Talk only if necessary, and testified that he both needed and expected to use Deaf Talk. Dkt. No. 28, Ex. 2 at 82.

The parties also disagree as to whether communication between Posner and Shady Grove medical staff was effective. Posner testified that he is unable to read lips, that he could not read the handwriting of the doctor, that the medical staff did not explain to him what was wrong with

him, and that the medical staff wrongly recorded his symptoms. Dkt. No. 28, Ex. 2 at 102. Posner's expert witness, Carol Stevens, a former nurse, testified that Shady Grove did not provide effective communication between Posner and the medical staff. Dkt. No. 28, Ex. 9 at 47-51. On the other hand, Shady Grove contends that the medical staff communicated with Posner in writing and that he was "understanding without problems." Faced with similar conflicting evidence, the *Proctor* Court denied the hospital's motion for summary judgment; here, as in *Proctor*, the question whether Shady Grove provided adequate auxiliary aids is one of fact which cannot be resolved on summary judgment.

Shady Grove's primary contention is that, regardless of the adequacy of the auxiliary services it provided to Posner, he cannot seek compensatory damages under the Act because he cannot show the requisite intentional discrimination. *See Pandazides v. Virginia Board of Education*, 13 F.3d 823, 830 n.9 (4th Cir. 1994); *Proctor*, 32 F. Supp. 2d at 828. Under the Rehabilitation Act,

> the question of intent in accommodations cases does not require that plaintiff show that defendants harbored an animus towards her or those disabled such as she. Rather, intentional discrimination is shown by an intentional, or willful, violation of the Act itself. With this understood, it becomes clear, that while defendants may have had the best of intentions, and while they may have believed themselves to be within the confines of the law, they nevertheless intentionally violated . . . the Rehabilitation Act by willfully withholding from plaintiff the reasonable accommodations to which she was entitled under the law. They had notice of the potential risk of their decision, and clearly refused the accommodation knowingly.

*Proctor*, 32 F. Supp. 2d at 829 (quoting *Bartlett v. New York State Bd. of Law Examiners*, 970 F. Supp. 1094, 1151 (S.D.N.Y. 1997), *aff'd in part* and *vacated in part on other grounds*, 156 F.3d 321 (2d Cir. 1998)). "[M]uch of the conduct that Congress sought to alter in passing the Rehabilitation Act would be difficult if not impossible to reach were the Act construed to

proscribe only conduct fueled by a discriminatory intent." *Choate*, 469 U.S. at 296-97. "Thus, in cases where a public accommodation is on notice that its failure to provide an accommodation may violate the Rehabilitation Act and intentionally opts to provide a lesser accommodation, compensatory damages are available." *Proctor*, 32 F. Supp. 2d at 829.

Courts have also described the standard for intentional Rehabilitation Act violations as deliberate indifference to the strong likelihood of a violation. In *Loeffler v. Staten Island Univ. Hosp.*, a deaf patient and his family made repeated requests for a sign language interpreter, and a member of the hospital staff made a few unsuccessful phone calls to try to obtain one. 582 F.3d 268, 271-72 (2d Cir. 2009). Despite a policy to provide interpreters, the hospital never provided one. *Id.* at 271-73. The Court of Appeals for the Second Circuit reversed the district court's conclusion that these facts would not support a finding of deliberate indifference, holding that the patient and his family's numerous attempts to obtain an interpreter and/or a TTY communication relay device, all unheeded, could support a finding that the hospital had actual knowledge of the discrimination and the authority to correct it, and failed to do so. *Id.* at 276-77. Similarly, the *Proctor* Court noted that where a public accommodation is on notice of the requirements of the Act and intentionally opts to provide a lesser accommodation, compensatory damages are available. 32 F. Supp. 2d at 829.

Here, Shady Grove does not dispute its knowledge of the requirements of the Act. In addition, the evidence most favorable to Posner, although not conclusive,[4] would support a finding that he made multiple requests for an interpreter, eventually choosing Deaf Talk over a live interpreter, and that Shady Grove made no attempt to provide Deaf Talk. The reason no

---

[4] The fact that Posner communicated with Shady Grove personnel for nearly four hours without indicating a lack of understanding or a need to use Deaf Talk, coupled with his admission that he at times consults with his own doctor without interpreting services, Dkt. No. 28, Ex. 2 at 32, may be significant in assessing the effectiveness of his communication with Shady Grove staff, the question whether Shady Grove's failure to provide Deaf Talk was intentional, and, of course, any amount of damages to which he may be entitled.

8

attempt was made is disputed, and a factfinder would not be required to accept Shady Grove's contention that Posner waived his right to interpretation services. Rather, a factfinder could instead determine that Shady Grove's failure to provide interpretation services was an intentional choice to provide a lesser level of accommodation.

Shady Grove's reliance on *Freydel v. New York Hosp.*, No. 00-7108, 2000 WL 1836755 (2d Cir. Dec. 13, 2000) and *Constance v. State Univ. of New York Health Sci. Ctr. at Syracuse*, 166 F. Supp. 2d 663 (N.D.N.Y. 2001) as supporting a contrary result, is misplaced. *Freydel*, of course, is unreported, but more importantly, both *Freydel* and *Constance* have been supplanted by the Second Circuit's holding in *Loeffler* that unheeded requests for interpreter services which the hospital knows it is required to honor are sufficient to support a finding of intentional discrimination. As noted, this district's precedents are consistent with *Loeffler*. Accordingly, the question whether Shady Grove's failure to provide Deaf Talk was intentional or was rather due to negligence, inadvertence, or Posner's own choice cannot be resolved on summary judgment.

**V. <u>Conclusion</u>.**

For the foregoing reasons, Shady Grove's motion for summary judgment is denied.


Date: <u>June 24, 2010</u>                     _____/S/_____
                                                JILLYN K. SCHULZE
                                                United States Magistrate Judge